In re Garabed KURDOGHLIAN aka Gary
Kurdoghlian, dba Gary's
Jewelry, Debtor.

BEAR STEARNS & CO., Appellant,
v.

Garabed KURDOGHLIAN aka Gary
Kurdoghlian, dba Gary's
Jewelry, Appellee.

BAP No. 82-1221.

Bankruptcy No. LA-81-03126JB.

Adv. No. LA-81-1899JB.

United States Bankruptcy Appellate
Panels of the Ninth Circuit.

Argued Jan. 20, 1983.

Decided March 15, 1983.

Jerome Monosson, Los Angeles, Cal., for
appellant.

Lawrence C. Meyerson, Los Angeles, Cal.,
for appellee.

Before ABRAHAMS, HUGHES and
KATZ, Bankruptcy Judges.

OPINION

HUGHES, Bankruptcy Judge:

Bear Stearns & Co. appeals from a judgment dismissing its nondischargeability complaint against debtor. We reverse and remand.

I

Plaintiff is a security broker whose business includes acting as a broker in the sale and purchase of options to sell or purchase securities, commonly known as "puts and calls." Options trading is considered highly speculative. See *Matter of Greenwald*, 2 B.R. 35, 36 (Bkrtcy.S.D.Fla.1979).

Defendant debtor, engaged in the business of jewelry manufacturing and repair, became a customer of plaintiff in July 1979 after having traded in options through another broker for at least a year.

Plaintiff placed defendant's orders on its credit and defendant was required to pay plaintiff for such orders within five days. Continued trading was conditioned on such payments. He normally paid by check, some of which did not clear his bank. Prior to December 1980, defendant notified plaintiff of each such check before plaintiff was informed of dishonor by its own bank. In each instance, defendant made the checks good with cash. During the period in question, he engaged in daily transactions.

Between December 10 and December 22, defendant purchased $214,734 of securities; some of these purchases were offset by sales and the balance by checks. Three checks totalling $51,175 did not clear. The maximum balance in his bank account during this period was $4873. During all of 1980, the balance never exceeded $10,532, and that only for one day.

On the morning of December 22, when defendant instructed plaintiff to purchase additional options in his account, he was told of a debit in his account of approximately $16,000. Defendant said he would take care of it.

Later the same day, plaintiff was notified by its bank that the first of the three checks had been dishonored and telephoned defendant. The latter stated he was aware of the dishonor. In due course the other checks were dishonored and his brokerage account was liquidated. It was determined that defendant owed plaintiff $61,370.

## II

Plaintiff's complaint sought judgment for $61,317 on the theory that it was excepted from discharge as a liability based on false representations. 11 U.S.C. § 523(a)(2)(A). It alleged that defendant "fraudulently ordered the purchase of securities on his account ... well knowing that he did not have sufficient funds to pay for same ..." It also alleged that defendant had fraudulently issued checks for $51,183 that were drawn against insufficient funds.

Following trial, the court filed a memorandum of decision stating that "plaintiff has failed to sustain its burden of proof" and concluding that "judgment of dismissal must be for defendant." The memorandum contained no other factual or legal recitals except for citations to three cases.

Defendant referred to those three cases in the following terms:

The only "false representation" that Kurdoghlian might have arguably made was in the issuance of insufficient funds checks. For this reason, the trial judge properly relied upon the cases ...

At the court's direction, defendant drafted findings of fact and conclusions of law. These were excepted to by plaintiff and went to a "second revision" before being signed by the court. Among the facts found were the following:

At the time that the Defendant, Garabed Kurdoghlian, gave the three (3) checks in question to Bear Stearns & Co., he did not know whether there were or were not sufficient funds in his bank account at the time.

Furthermore:

It was Mr. Kurdoghlian's belief that he had sufficient credit in his account at Bear Stearns & Co. to cover any checks which he was giving to them, and Gar-

abed Kurdoghlian relied upon the fact that he could cover any outstanding checks by liquidating a portion of his account.

Later:

10. Garabed Kurdoghlian never had the intent to deceive Bear Stearns & Co. either with respect to his current financial condition at any time during the course of their dealings, or by presenting to them checks which were subsequently returned because of non-sufficient funds.

Except for the ultimate conclusion that the debt was dischargeable, the only conclusion of law relating to specific findings was:

4. The issuance of an insufficient funds check does not give rise to a non-dischargeable liability under Section 523(a)(2)(A) ... unless the Debtor was guilty of misrepresentation to defraud in connection with the issuance of such check.

## III

We are bound to accept the trial court's findings of fact unless they are clearly erroneous. Bankruptcy Rule 810. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The finding of fact that defendant did not know whether or not sufficient funds were in his account was clearly erroneous in view of the evidence as a whole and his testimony in particular. The only direct evidence supporting that finding was defendant's testimony that he did not "know exactly that the balance in there for $25,000 or less or more" when asked if he *believed* at the time there was enough in the account to cover the check. Earlier, however, he testified:

Q. Did you know that you did not have a balance sufficient to cover that check at that time?

A. No, I did not know.

And later:

Q. Well, what led you to believe—did you believe at the time that you wrote

that $25,000 check you had enough money in your account to cover it?

A. No.

At this point, the witness was asked again if he believed there was enough in the account to cover the check and he replied as noted above. He gave no testimony about the bank account on examination by his attorney.

On the other hand, he acknowledged that the balance in his account at the end of November was $4296, that he made no large deposits in December, that he was trading daily ("It's every day purchasing and selling").

Defendant also testified that he was informed by his bank of any check dishonor within two to four days of its issuance.

The checks in question were written on the following dates:

| | |
|---|---|
| Dec. 10 | $4788 |
| Dec. 15 | $21,140 |
| Dec. 17 | $25,247 |

Thus, at least by the time he wrote checks totalling $46,000 he knew that there was not enough in his account to cover a check for less than $5000.

Even disregarding that inescapable inference, however, the evidence as a whole demonstrates a conscious, or at least reckless, disregard for the state of defendant's bank account during the period in question, and this amounts to the same thing as actual knowledge. *In re Houtman,* 568 F.2d 651 (9th Cir.1978).

Likewise, the finding (No. 10) that defendant "never had the intent to deceive Bear Stearns & Co. ... by presenting to them checks which were subsequently returned because of non-sufficient funds" was clearly erroneous. Intent to deceive may be inferred from other facts. Thus, where "the defendant knew (or should have known) that his failure to disclose delinquent debts would make the financial statement materially false and that the false statement would mislead and deceive the plaintiff into making a loan, the defendant *will be found to have intended that result (the deception).* That proposition is logical and comports with the current law on the

subject." *Matter of Nelson,* 561 F.2d 1342–1346–7 (9th Cir.1977). (Emphasis supplied).

Kurdoghlian knew (or should have known) there were insufficient funds to cover two or more of the three checks. Tendering the checks was an implicit representation the checks were good. The representation was false. *Matter of Greenwald,* supra, at p. 36 (false implied representation); *In re McKinzie,* 3 B.C.D. 1092 (Bkrtcy.D.Or.1977) (same, credit cards). Defendant knew that plaintiff would cut off his trading if the checks were not issued; thus, they were issued for the purpose of inducing reliance. The logic of these facts leads to only one ultimate finding of fact: defendant intended to deceive plaintiff when at least two of the checks were issued.

Because the essential findings of fact cannot stand, neither can the conclusion that the debt is not excepted from discharge.

IV

Several questions remain to be resolved on remand. Although both the defendant and the trial court viewed this simply as a case involving insufficient funds checks, this was not plaintiff's theory of the case.

In its words, "the gravaman of the case was not the purchase of securities with checks drawn against insufficient funds. The fraud alleged was the purchase of securities from the Plaintiff without the intention of paying for them." It argued that issuance of checks against insufficient funds was evidence supporting its theory of the case.

It was stipulated that the defendant's financial condition at the time of bankruptcy was much the same as it was in December 1980, which is to say he was insolvent when he engaged in the December trading. He testified that when this trading took place "the market was against me." Thus at some point in time, certainly no later than when he issued the second and third insufficient funds checks, he knew (or should have known) he "could not pay for additional purchases but continued to make

them in a desperate gamble to extricate himself." *Matter of Greenwald,* supra, at 36–37.

Only the trial court can make the requisite finding of fact as to when this event took place. Only after that date is established can the court make a finding as to the damages proximately resulting from that misrepresentation.

Reversed and remanded for proceedings.