**In re Thomas B. BOYER, Debtor.**

**H & H LUMBER COMPANY, Plaintiff,**

v.

**Thomas B. BOYER, Defendant.**

**Bankruptcy No. 485–00344.
Adv. No. 485/0063.**

United States Bankruptcy Court,
D. Montana.

July 9, 1986.

John K. Addy, Billings, Mont., for debtor.

Pierre Bacheller, Billings, Mont., for plaintiff.

**ORDER**

JOHN L. PETERSON, Bankruptcy Judge.

H & H Lumber Company filed a complaint to determine dischargeability of its debt in the alleged sum of $26,025.98 under Section 523 of the Code. After answer by the Debtor, trial of said cause was held on May 23, 1986. Proposed Findings of Fact and Conclusions of Law have been filed by the respective parties.

H & H Lumber is engaged in the sale of building materials and supplies. The Debtor, being engaged in the general construction business, was a trade creditor of H & H. One of the construction projects of the Debtor involved the building of a residence

at 337 Cape Cod St., Billings, Montana, for which H & H provided construction materials. At the conclusion of the job, the Debtor was required to secure lien waivers to complete financing, from which funds the Debtor was to pay those firms who had potential liens against the building. On March 9, 1984, the Debtor instructed his secretary to issue a series of 20 checks involving the Cape Cod property. Among the checks issued was No. 6503 to H & H Lumber for the sum of $20,610.82. The secretary delivered the check to H & H and in return received a lien waiver from the creditor. This employee, Rhonda Amen, testified she made an error in the bank book which showed a wrong balance resulting in the check delivered to H & H being returned for non-sufficient funds. After the weekend, the Debtor discovered the insufficient check problem, contacted H & H and asked it to hold the check until he received a draw from another construction project then ongoing. The check was never paid and ultimately the Debtor transferred to H & H in the summer of 1984 two vehicles and trailers which he felt had a value of $30,000.00 to pay the H & H account. From all of the circumstances, I find the Debtor believed at the time check No. 6503 was issued to H & H that there were sufficient funds in the Debtor's account to cover payment of that check. All other checks written on the Cape Cod project to trade creditors were paid. The creditor H & H contends that the issuance of the bad check with the contemporaneous delivery of the lien waiver constitutes facts sufficient to deny the discharge of its debt under Section 523(a)(2)(A) of the Code. The creditor relies on the case of *Bear Stearns & Company v. Kurdoghlian,* 30 B.R. 500, 8 C.B.C.2d 1175 (BAP 9th Cir. 1983).

For the creditor to sustain a finding of non-dischargeability under Section 523(a)(2)(A), it must satisfy its burden of proof on five elements, which are set forth in *In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978):

"(1) The debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representation and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made."

It is generally agreed, that the use of a check drawn on insufficient funds, alone, is not conclusive evidence of an intent to defraud under Section 523(a)(2)(A). *In re Collins,* 28 B.R. 244, 247 (Bankr.W.D.Okl. 1983); *In re Singleton,* 37 B.R. 787, 792 (Bankr.Nev.1984); *Trumbull Building Center Inc. v. Buttendorf,* 11 B.R. 558, 562 (Bankr.Vt.1981); *Hill v. Murray,* 7 B.R. 899, 900 (Bankr.W.D.Mo.1981). The case of *In re Kurdoghlian,* supra, dealt with option trading by the debtor and the issuance of a series of checks to the broker under facts where the Debtor knew there were insufficient funds in his account and that he knowingly issued bad checks in order to continue his trading with the broker. While *Kurdoghlian* states that "tendering the checks was an implicit representation the checks were good", when in fact he knew they were not, the facts in that case also show that the Debtor knew that the plaintiff broker "would cut off his trading if the checks were not issued", so that the issuance of the checks (at least three bad checks) induced reliance, thus the debtor intended to deceive the broker. *Id.,* 30 B.R. at 502. For a discussion of *In re Kurdoghlian,* see *In Re Younesi,* 34 B.R. 828 (Bankr.S.D.Cal.1983).

The creditor in a case involving Section 523(a)(2)(A) must prove each element by clear and convincing evidence. *In re Huff,* 1 B.R. 354 (Bankr.Utah 1979). In this case, I conclude the creditor's evidence from all the circumstances falls short on the intent to deceive the creditor by the Debtor. The bookkeeping error, combined with the fact that all other checks from the job cleared, is evidence that the Defendant Debtor did not have any intent to deceive. Thus, there was no present intention to deceive at the time the check was written. The check was never paid because the Debtor's busi-

ness at the time was failing and his efforts to obtain other moneys to pay the check were not successful. Further, Debtor's subsequent settlement of the account by transfer of vehicles and other equipment to the creditor evidences that the parties struck an accord for payment of the obligation, so that the creditor has failed to prove any resulting damage, if there was in fact fraud committed by the Debtor.

IT IS ORDERED that judgment shall be entered for the Defendant Debtor and against the Plaintiff H & H Lumber Company.