In re Mary Ann NEWELL, Debtor.

**MERAMEC VALLEY BANK, Plaintiff,**

v.

**Mary Ann NEWELL, Defendant.**

Bankruptcy No. 93–42184–172.
Adv. No. 93–4414–172.

United States Bankruptcy Court,
E.D. Missouri, E.D.

March 14, 1994.

Robert J. Blackwell, Trustee, St. Louis, MO.

Eric M. Martin, Valley Park, MO, for plaintiff.

Wendell J. Scherk, St. Louis, MO, for debtor/defendant.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The trial of this adversary proceeding was conducted on February 9, 1994. The parties agreed that the matter would be submitted to the Court on the testimony and evidence at trial, including certain stipulated facts, and the arguments of counsel. At the conclusion of the trial, the Court granted the parties additional time to submit memoranda of law with respect to the dischargeability issues presented in this matter.

This is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri. These determinations and this order are the final findings, conclusions and orders of the Bankruptcy Court.

Meramec Valley Bank ("Plaintiff") filed a Complaint on July 13, 1994 against Mary Ann Newell ("Debtor"). The Complaint requests the following: a determination that a certain debt owed to the Plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); an award to Plaintiff of a money judgment; and any other and further relief as may be just and proper. The Debtor filed an answer to the Plaintiff's complaint on August 6, 1993.

Debtor filed a voluntary Petition for Relief under Chapter 7 of Title 11 of the United States Code on April 19, 1993. An Order of Discharge was entered on September 10, 1993.

From about July, 1991 to September, 1991, the Debtor maintained an account at the Plaintiff's Bank under the name of "Rainbow Pre–School, Inc., d/b/a Kensington Academy." Plaintiff has argued in this matter that Debtor engaged in a series of deposits and withdrawals of funds involving different banks that eventually resulted in a net negative balance of $11,300.00 in Debtor's account at Plaintiff's institution. Plaintiff has requested the Court to declare this debt non-dischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code because Debtor obtained money from Plaintiff by actual fraud, false pretenses and false representations. Plaintiff alleges that at the time Debtor deposited checks in the account at Plaintiff's bank, and when she wrote checks against this account, Debtor knew there were not sufficient funds in the accounts to pay the checks. The Plaintiff has alleged further that thereafter, Debtor attempted to cover the checks by depositing another check in Plaintiff's institution drawn against an account in which there were insufficient funds. Plaintiff has argued that Debtor engaged in "check kiting" by conducting this series of transactions.

Debtor maintained bank accounts at various institutions in the corporate names of Rainbow Pre–School, Inc. ("Rainbow"), Rainbow Pre–School, Inc. d/b/a Kensington Academy ("Kensington"), and in her name individually. Debtor was the sole shareholder of Rainbow. The authorized signatories on the Kensington account were Debtor and her non-debtor husband. The record has established that Debtor deposited a check at Plaintiff's institution on December 11, 1991 for $6,000.00, drawn on the Debtor's individual account at First Bank[1] with the payee designated as Kensington. *See* Plaintiff's

---

1. Debtor maintained a checking account at First Bank in St. Louis, Missouri ("First Bank") in the name of "Mary A. Newell" from at least September 1991 through December 1991. *See* Plaintiff's Exhibit A.

Exhibit D. On the following day, December 12, 1991, Debtor deposited a check at Plaintiff's institution for $9,200.00 drawn on the Rainbow account at Bank of Chesterfield[2] with the payee again designated as Kensington. *See* Plaintiff's Exhibit E. Both of these checks were dishonored by the respective payor banks due to insufficient funds in the accounts. The dishonoring of these two checks resulted in a negative balance in Debtor's checking account at Plaintiff's institution. Plaintiff was able to recover about $4,000.00 of the deposits and thus requests a judgment against Debtor for $11,300.00, along with any other relief the Court deems just and proper.

The standard of proof with respect to exceptions to discharge is the preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). For Plaintiff to succeed under § 523(a)(2)(A), it must establish the following five elements:

(1) that the debtor made false representations;

(2) that at the time made, the debtor knew the representations to be false;

(3) that the representations were made with the intention and purpose of deceiving the creditor;

(4) that the creditor reasonably relied on the representations; and

(5) that the creditor sustained the alleged injury as a proximate result of the representations having been made.

*In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987).

The first element requires that Plaintiff establish that Debtor made false representations. Ordinarily, the "delivery of an ultimately-dishonored check, *without more,* does not constitute an actionable representation under § 523(a)(2)(A)." *In re Tuggle,* 86 B.R. 612, 615 (Bankr.E.D.Mo. 1988). However, when surrounding circumstances indicate that a debtor intended to deceive a creditor when issuing an insufficient funds check, and when a debtor knew that sufficient funds did not exist, a debtor is not entitled to a discharge of the debt. *See In re Kurdoghlian,* 30 B.R. 500 (9th Cir.BAP 1983); *In re Miller,* 112 B.R. 937 (Bankr. N.D.Ind.1989); *In re Lewsadder,* 84 B.R. 711 (Bankr.D.Or.1988); *In re Mullin,* 51 B.R. 377 (Bankr.S.D.Ind.1985).[3] The *Kurdoghlian* Bankruptcy Appellate Panel stated that the tendering of a check was an implicit representation that sufficient funds existed to cover the check; because that representation proved false, the Panel concluded the debtor had made a false representation. *Kurdoghlian,* 30 B.R. at 502; *see also In re Almarc Mfg., Inc.,* 62 B.R. 684, 689 (Bankr.N.D.Ill.1986) (issuance of check constitutes implied representation of sufficient funds); *In re Perkins,* 52 B.R. 355, 357 (Bankr.M.D.Fla.1985) (same). Similarly, in the matter being considered here, the Court has determined that the surrounding circumstances demonstrate that Debtor knew that sufficient funds did not exist and that therefore, the Debtor made a false representation when the checks were written to and drawn against the Plaintiff's account.

The record here has shown that on December 11, 1991, when the Debtor wrote and deposited check number 386, in the amount

**2.** Debtor maintained a checking account at Bank of Chesterfield in the name of "Rainbow Pre-School, Inc., Mary A. Newell" from at least September 1991 through December 1991. *See* Plaintiff's Exhibit B.

**3.** The Court recognizes that the United States Supreme Court decision in *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) has induced some bankruptcy courts to conclude that when a debtor issues a check, he makes no representation that his bank will honor the check. *See, e.g., In re Jenkins,* 61 B.R. 30, 40 (Bankr.D.N.D.1986); *In re Hammett,* 49 B.R. 533, 535 (Bankr.M.D.Fla.1985); *In re Paulk,* 25 B.R. 913, 917 (Bankr.M.D.Ga.1982). These bankruptcy courts have placed great reliance on the Court's determination in *Williams* that an insufficient funds check does not make any representation as to the state of the issuer's bank account. *Williams,* 458 U.S. at 285, 102 S.Ct. at 3091. The Supreme Court reached this conclusion when it was deciding whether the issuance of an insufficient funds check satisfied one of the elements of a *criminal* statute. Although the elements of the criminal statute and the elements of an action under § 523(a)(2)(A) are similar, the application of a standard derived from a criminal proceeding to a civil proceeding is questionable. This Court thus declines to join those bankruptcy courts that have applied the *Williams* decision to a determination regarding nondischargeability.

of $6,000.00, the First Bank account upon which the check was drawn had a balance of no more than $1,727.14. Thereafter, the Debtor wrote the following checks against the account at Plaintiff's Bank, into which she had deposited the First Bank check:

1. Check No. 1048, dated December 11, 1991, in the amount of $4,222.00, payable to Rainbow, endorsed for deposit into the account at the Bank of Chesterfield;

2. Check No. 1049, dated December 11, 1991, in the amount of $5,300.00, payable to Mary Newell, endorsed by Mary Newell;

3. Check No. 1050, dated December 12, 1991, in the amount of $100.00, payable to Kermit and Sharon Henlee (last name blurred on exhibits), endorsed by the payees, but bearing the stamp, "INSUFFICIENT."

On December 12, 1991, when the Debtor wrote and deposited into the account at Plaintiff's Bank, check number 1409, in the amount of $9,200.00, the Bank of Chesterfield account upon which the check was drawn had a balance of $5,052.62. *See* Plaintiff's Exhibits "B" and "C."

Debtor deposited two checks in Plaintiff's institution on consecutive days, drawn on two different banks. Both were returned for insufficient funds. The proximity in time of these two deposits, in the circumstances that have been presented here, compels the conclusion that the Debtor falsely represented that she possessed sufficient funds to cover the checks.

■ The second element requires that the Debtor knew the representations were false when they were made. This element is satisfied from a consideration of the record as a whole, as well as from the proximity in time of the depositing of the checks and the grossly inadequate balances in Debtor's accounts to cover the checks.

■ The third element requires proof that the false representations were made with the intent to deceive the creditor.[4] Debtor has argued that she either lacked the intent to deceive required by § 523(a)(2)(A)

or was incapable of forming such intent. Direct evidence of intent seldom exists and thus courts may look to surrounding circumstances to ascertain intent. *Van Horne*, 823 F.2d at 1287; *In re Oliver*, 145 B.R. 303, 307 (Bankr.E.D.Mo.1992). To rebut the evidence of intent to deceive adduced by Plaintiff at trial, Debtor offered testimonial evidence. Debtor testified that she had limited business experience and little education beyond the high school level. Furthermore, Debtor testified that during the latter part of 1991, the time period relevant to this proceeding, she was in a deep state of depression and attempted to take her own life. A friend and former employee of the Debtor also testified in this matter that Debtor was experiencing difficulties in her personal life during late 1991. Although the record indicates Debtor was experiencing both personal and business difficulties, the facts nevertheless demonstrate Debtor knew she did not have sufficient funds in the bank accounts when she falsely represented that she possessed such funds. The evidence concerning Debtor's personal circumstances fails to overcome the conclusion drawn from the surrounding circumstances and the entire record that Debtor possessed the intent to deceive required by § 523(a)(2)(A).

■ The fourth element requires a showing that the creditor reasonably relied on the representations. Debtor has argued in defense that Plaintiff did not employ standard or prudent banking practices in providing funds to Debtor before Debtor's checks drawn on First Bank and Bank of Chesterfield were honored by those banks. The Plaintiff's witness testified that certain banking regulations require that funds must be made available immediately upon deposit by a customer. This testimony was not refuted by the Debtor. If a history of dishonored checks drawn on a certain account is known to have existed, a bank retains discretion to hold the withdrawal of funds. Although Plaintiff apparently was aware that at least one insufficient funds check had been drawn against the Debtor's account, this record has

4. Plaintiff's partial reliance on Missouri Revised Statute § 570.220 (Supp.1993) (criminal "check kiting" statute) is not necessary to prove the

intent to deceive element required by § 523(a)(2)(A); thus, the Court will not address the relevance of § 570.220 to this proceeding.

not established that a pattern or history of dishonored checks drawn by Debtor existed such that Plaintiff's failure to delay the immediate release of funds to Debtor bars Plaintiff from prosecuting this claim of non-dischargeability. Furthermore, at least one court has held that under § 523(a)(2)(A), a creditor is not necessarily required to prove that its reliance on a debtor's fraudulent misrepresentation was reasonable; a creditor only needs to show that it relied on the misrepresentation. *In re Ophaug,* 827 F.2d 340, 343 (8th Cir.1987). The Court finds and concludes that, based upon a consideration of the record as a whole, the Plaintiff's reliance on the Debtor's representations that she possessed sufficient funds, and Plaintiff's payment of the checks, was not unreasonable.

The last element required for nondischargeability is that the creditor sustained the alleged injury as a proximate result of the representations having been made. Debtor's misrepresentations caused Plaintiff to suffer a loss in the form of a net negative balance in the account at Plaintiff's bank as of the commencement of this case. Clearly, Plaintiff has suffered a loss of at least $11,-300.00 as a result of Debtor's misrepresentation.

Therefore, Plaintiff has satisfied all of the elements to establish a false representation that is not dischargeable in this case. By a separate order, judgment is entered in favor of the Plaintiff and against the Defendant.

### ORDER

At Saint Louis, in this District, this 14th day of March, 1994.

On consideration of the record as a whole, and consistent with the determinations set out in the Memorandum in this matter,

**IT IS ORDERED** that this matter is concluded; and that this is a final order on this matter; and that judgment on the Complaint of Meramec Valley Bank ("Plaintiff") is granted in favor of Plaintiff and against Mary Ann Newell ("Debtor"); and that said Debtor is to pay said Plaintiff the amount of $11,300.00 as and for judgment in this matter; and

That the debt owed by Debtor to Plaintiff as set out in this proceeding and judgment order is **NOT DISCHARGEABLE** in this bankruptcy case as being a debt obtained by false pretenses and false representations pursuant to 11 U.S.C. § 523(a)(2)(A).