NATIONAL ACCEPTANCE COMPANY OF AMERICA, Plaintiff-Appellee, *v.* PINTURA CORPORATION *et al.*, Defendants-Appellants.

Second District    No. 79-604

Opinion filed March 27, 1981.

David Apter, of Kantor & Apter, Ltd., of Chicago, and James M. Huck, Jr., of Huck & Walsh, of Wheaton, for appellants.

Michael A. Reiter and Steven M. Rasher, both of Katten, Muchin, Gitles, Zavis, Pearl & Galler, of Chicago, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

The plaintiff, National Acceptance Company of America (NACA), filed a four-count complaint against defendant Pintura Corporation, defendant Richard Nieto, Pintura's president and sole shareholder, defendant Highland Construction Company and defendant Gary-Wheaton Bank. Count I was against defendants Pintura and Nieto alleging conversion of funds due NACA; count II also was against Pintura and Nieto alleging breach of a contractual obligation in an assignment to NACA; count III was against Highland Construction Company and was dismissed prior to trial; and count IV was against defendant Gary-Wheaton Bank alleging wrongful honoring of checks with improper and unauthorized endorsements due NACA on its assignment. Defendant, Gary-Wheaton

Bank counterclaimed against Pintura and Nieto for indemnification as to any judgment against it. Following a bench trial, judgment was entered for NACA and against Pintura and Nieto for $26,667.14 in count I; for NACA and against Pintura for $26,667.14, and for Nieto and against NACA in count II; for NACA and against Gary-Wheaton Bank and against Pintura and Nieto for $26,667.14 on its counterclaim. The sole party appealing, Gary-Wheaton Bank having dismissed its appeal, is Nieto on the judgment against him for $26,667.14 in count I. Nieto contends on appeal that: (1) as a corporate officer he may not be held individually liable for conversion committed in behalf of and for the sole benefit of the corporation; and (2) that the judgment against him was against the manifest weight of the evidence.

At the time of the events in controversy, the Pintura Corporation was an Illinois corporation engaged in the business of finishing and installing dry wall in construction projects. Nieto was its president and sole shareholder. Wille Building Materials Corporation (Wille), a nonparty, was an Illinois Corporation which supplied Pintura with dry wall and other supplies. Plaintiff NACA was and is in the business of making commercial loans. On May 23, 1974, Pintura assigned to Wille the balance of all monies to become due to Pintura from one Highland Construction Co., for work performed on a project in Elgin, Illinois. The assignment recites that it was given in consideration for Wille's continued extension of credit to Pintura. On September 27, 1974, in order to secure Wille's indebtedness to NACA, Wille assigned to NACA its right in the Pintura-Wille assignment. Subsequently, Highland issued five checks, totaling $35,322.73 payable jointly to Pintura and Wille. The checks were dated October 8, 1974, January 4, 1975, January 30, 1975 (two checks), and April 30, 1975. All checks were deposited in Pintura's corporate account. It was stipulated that defendant Nieto endorsed three checks in Pintura and Wille's names, and that he directed and authorized endorsement and deposit of the other two checks in Pintura's behalf. At trial the evidence pertinent to this appeal centered on the testimony of William A. Wille, vice-president of Wille, and of Richard Nieto as it related to the amount due and interest thereon from the sale of building materials by Wille to Pintura and whether William Wille authorized Nieto to endorse and deposit the five checks in question. These two persons were the only witnesses testifying on that aspect of the case, the pertinent portions of which will be more fully developed in a subsequent portion of this opinion.

■■ The first issue for our review is whether defendant Nieto, a corporate officer, may be held individually liable for conversion committed by him in behalf of and for the sole benefit of the corporation. Defendant contends that, in the absence of proof of personal benefit, he is not individually liable. Plaintiff NACA raises the preliminary point that defend-

ant has waived that defense, if it be one, by his failure to assert this at trial. We agree that Nieto limited his answer and trial strategy to other defenses, and that generally an appellate court will not consider for the first time on appeal a defense not interposed by answer and supported by evidence at trial. (*Government Employees Insurance Co. v. Dennis* (1965), 65 Ill. App. 2d 365, 212 N.E.2d 759; see also *Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) However, we believe that the issue of an officer's liability in conversion, which is a tortious action, as opposed to contract, is not an affirmative defense to be raised by defendant, but rather is part of the plaintiff's case to be pleaded and proved.

■■ One of the purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf. In contrast, although the officer is not liable for the corporation's torts simply by virtue of his office, corporate officer status does not insulate him from individual liability for the torts of the corporation in which he actively participates. (*Stansell v. International Fellowship, Inc.* (1974), 22 Ill. App. 3d 959, 318 N.E.2d 149; *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369; *Miller v. Simon* (1968), 100 Ill. App. 2d 6, 241 N.E.2d 697.) Thus a corporate officer may be liable for the negligence of the corporation (*McDonald v. Frontier Lanes, Inc.*); for fraud (*Taylor v. Currey* (1915), 192 Ill. App. 502 (abstract)); trespass to realty (*Miller v. Simon*); wilfully inducing breach of contract (*W. P. Iverson & Co. v. Dunham Mfg. Co.* (1958), 18 Ill. App. 2d 404, 152 N.E.2d 615); and conversion (*Landfield Finance Co. v. Regal Box Co.* (1952), 345 Ill. App. 611, 104 N.E.2d 359 (abstract)).

■■ Defendant relies on numerous out-of-state cases for the proposition that a corporate officer's liability for conversion requires proof of personal benefit in addition to active participation in the conversion. Notwithstanding the law in other States, we must disagree that this is the Illinois rule. In Illinois, liability for conversion, generally, does not require proof that the converter has thereby personally benefited (*Ferriman v. Fields* (1878), 3 Ill. App. 252), since the essence of conversion is not acquisition of property by the wrongdoer, but deprivation of the owner. (*Brown v. Peter Epsteen Pontiac, Inc.* (1977), 55 Ill. App. 3d 876, 371 N.E.2d 151.) It is apparent that the courts in this State have not set forth a different rule for corporate officers. In *Landfield Finance Co. v. Regal Box Co.* (1952), 345 Ill. App. 611 (abstract), defendant corporate officers were held liable although the converted funds were deposited in the corporate bank account. Likewise, in *Taylor v. Currey* (1915), 192 Ill. App. 502 (abstract), the court held that a "corporate agent is liable to third persons for conversion * * * [and] it is no defense * * * that he received no benefit from his wrong or that he has paid the proceeds of his wrong to his principal." In this respect, Illinois follows the majority rule that a

corporate officer is individually liable in conversion although he does not personally benefit. (19 C.J.S. *Corporations* §849 (1940).) We therefore hold that a corporate officer's individual liability for conversion committed by him personally in behalf of the corporation is established in the same manner as his liability for any other tort; by proof of active participation in the conversion. Inasmuch as the parties stipulated that defendant Nieto endorsed and deposited some checks, and directed the same as to other checks, we find that his active participation was shown sufficiently to render him individually liable in conversion of those funds. Defendant also argues that in the peculiar circumstances of this case, application of the foregoing rule, that no proof of personal benefit is necessary, will have the effect of circumventing the general rule that a corporate officer is not individually liable on a contract entered into by him for a corporation unless also contracting in his own behalf. (*Laff v. Chapman Performance Products, Inc.* (1978), 63 Ill. App. 3d 297, 379 N.E.2d 773, and *Polivka v. Worth Dairy, Inc.* (1974), 26 Ill. App. 3d 961, 328 N.E.2d 350.) Defendant asserts that if he is held liable for conversion of the assigned funds, he will, in effect, be forced to pay a Pintura corporate debt incurred by virtue of the contract of assignment. Such may be the effect, but that is the rule in conversion. Although a corporate officer is not generally liable for breach of contract, his status does not shield him from liability for tortious acts from which the breach proximately resulted. *Kane v. Nomad Mobile Homes, Inc.* (1969), 105 Ill. App. 2d 465, 245 N.E.2d 512 (abstract).

■■ The final issue for our review is whether the judgment of the trial court is against the manifest weight of the evidence. Defendant asserts that the judgment was erroneous in light of his evidence that William Wille, vice-president of Wille, authorized him to endorse and deposit the assigned funds in Pintura's account. Where as here, the judgment of the trial court is not accompanied by findings of fact, the presumption is that the trial court found all issues and controverted facts in favor of the prevailing party. (*Wood v. Price* (1868), 46 Ill. 435; *Notzke v. Art Gallery, Inc.* (1980), 84 Ill. App. 3d 294, 405 N.E.2d 839). Since lack of authorization to deal with the subject property is an essential element of a cause of action for conversion (*Western States Mutual Insurance Co. v. Verucchi* (1977), 66 Ill. 2d 527, 363 N.E.2d 826), we must presume the trial court found that William Wille did not authorize defendant to endorse and deposit the five checks in Pintura's account. The trial court's finding and judgment will not be disturbed on appeal unless manifestly against the weight of the evidence. *Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.

■■ The testimony at trial was in conflict. Defendant Nieto testified to the following. During conversations with William Wille somewhere between

May and October 1974, and again prior to the issuance of each check, defendant obtained Mr. Wille's verbal permission to endorse and deposit the checks in Pintura's account. On one such occasion he informed Mr. Wille that Pintura needed the money to meet its payroll and pay for materials and supplies. Additionally, he obtained written waivers of lien from Wille which he was required to give to Highland Construction in order to obtain the checks. On four or five occasions defendant Nieto went personally to Highland Construction to pick up the checks, and on several occasions Mr. Wille accompanied him. However, Nieto testified initially that he was unable to recall whether Mr. Wille was along when any of the five checks in controversy were obtained. Then he stated Mr. Wille was present when he picked up the first check that Highland issued. He also admitted making a deposition statement that Mr. Wille accompanied him twice to pick up checks dated January 4, 1975, and January 30, 1975. At one point his testimony indicated that Mr. Wille's initial permission for Nieto's endorsements and deposit of the checks extended to all future checks; yet, on further examination he contradicted this testimony. Finally he acknowledged a deposition statement that arrangements for disposition of the checks was to be made on a check-by-check basis.

William Wille testified that he never authorized defendant Nieto to sign the checks, deposit them into Pintura's account or negotiate them. He first learned that the checks were being deposited in Pintura's account through the Highland Construction Company. He subsequently confronted Nieto about the checks, but defendant never admitted receiving them. He acknowledged that Wille did receive two other checks from Highland, endorsed by Nieto and forwarded by the Pintura Corp. He denied giving any waivers of lien to Pintura Corp., and indicated that Wille's practice was generally to withhold waivers until checks were received.

The conflicting testimony required resolution of a credibility issue and the trial court apparently accepted Mr. Wille's testimony favoring the plaintiff. The trial judge, as the trier of fact, is in a position superior to a court of review to determine credibility. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) We will not overturn that determination barring a record clearly contrary to the trial court's finding. (*Pensgard v. Powers* (1972), 8 Ill. App. 3d 646, 290 N.E.2d 642.) In this case, defendant Nieto was a party to the suit and therefore clearly an interested witness. Mr. Wille, on the other hand, was a nonparty, a bankrupt and was no longer indebted to NACA. Defendant's testimony as to the extent of verbal authorization and the parties arrangement for deposit of the checks was inconsistent. To say the least, his testimony as to the dates on which Mr. Wille went with him to obtain the checks was

ambiguous, and further was impeached by a deposition statement. His testimony that Mr. Wille forwarded waivers of lien for all five checks seems unlikely in light of his varying testimony that Mr. Wille actually accompanied him to obtain one or some of those checks. Mr. Wille's testimony on the other hand was generally unwavering. Since we find that the trial court's conclusion on the issue of authorization is amply supported by the testimony of Mr. Wille, we hold that the judgment was not against the manifest weight of the evidence.

Affirmed.

VAN DEUSEN and NASH, JJ., concur.