**In re Patricia BLAKE–WARE, Debtor.**

**119TH & HALSTED CURRENCY EXCHANGE, Plaintiff,**

**v.**

**Patricia BLAKE–WARE, Defendant.**

Bankruptcy No. 91 B 14870.

Adv. No. 92 A 1034.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 11, 1993.

Ardwin Boyer, Chicago, IL, for plaintiff.

Clarence King, Chicago, IL, for debtor, defendant.

### MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on the adversary complaint of 119th & Halsted Currency Exchange, Inc. against the Debtor, Patricia Blake–Ware. In this proceeding, Currency Exchange seeks to have its claim against the Debtor declared nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. For the reasons stated below, this courts grants judgment for Currency Exchange.

### FACTS

The Debtor was the sole owner of Charon and Mylen Real Estate Company, which managed and renovated commercial buildings. Sometime in 1986–87, the Debtor began using Currency Exchange, in effect, as one of her banks, cashing large numbers of checks written on the business account of C & M with Currency Exchange each month. These checks were often for significant sums of money. For example, in November–December 1991, the Debtor cashed over seventy checks totalling almost $600,000 with the Currency Exchange. Over a six year period, the Debtor bounced only a few small checks.

In January 1992, things changed. On four days that month (January 8, 13, 14, and 17), the Debtor bounced a total of twelve checks in the amount of $77,500. In conformance with its normal check-cashing procedure, and in view of the long-standing relationship it had with the Debtor, Currency Exchange did not attempt to verify with the Debtor's bank that the checks were good prior to accepting them. However, on each occasion, Mark Kursten, the owner of Currency Exchange, specifically asked the Debtor if there were sufficient funds in the Debtor's account to cover the checks. Each time, the Debtor responded affirmatively. The Debtor made these representations despite the fact that, each morning,

she called her bank and was informed that there was a negative balance in the account on which the checks were written.

On July 2, 1992, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On July 31, 1992, Currency Exchange filed the instant adversary complaint objecting to the dischargeability of the $77,500 debt owed by the Debtor to Currency Exchange under § 523(a)(2)(A) of the Bankruptcy Code. Currency Exchange claims that the Debtor fraudulently induced it to cash the checks in question, leaving it with a claim against the Debtor of $77,500, which claim should be found to be nondischargeable in the instant Chapter 7 case.

## JURISDICTION AND PROCEDURE

This court has jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter arising under § 523 of the Bankruptcy Code. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as a proceeding involving the dischargeability of a particular debt and is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination.

## DISCUSSION

Section 523(a) of the Bankruptcy Code provides that debts based on fraud are nondischargeable. Specifically, § 523(a)(2)(A) provides that where a debtor obtained money or property by means of "false pretenses, a false representation, or actual fraud," the debt owed to the victim is nondischargeable in a Chapter 7 case. 11 U.S.C. §§ 523(a)(2)(A), 727.

■ There are four elements required for a finding of fraud under § 523(a)(2)(A): (1) the debtor made a statement either knowing it to be false or with reckless disregard for the truth; (2) the debtor make the statement with the intent to deceive; (3) the creditor actually and reasonably relied upon the misrepresentation; and (4) as a result of such reliance, the creditor suffered some loss or detriment.

*Matter of Scarlata,* 979 F.2d 521, 525 (7th Cir.1992); *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986). The party challenging the discharge has the burden of proving all of the elements of fraud by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ There is a split in the caselaw over whether the issuance of a check by a debtor in and of itself constitutes an implied representation sufficient to qualify as a "statement" (within the meaning of § 523(a)(2)(A)) that there is money in the debtor's bank account to cover the check. *Compare Matter of Scarlata,* 979 F.2d 521, 525 (7th Cir.1992) *with In re Kurdoghlian,* 30 B.R. 500 (9th Cir. B.A.P. 1983). *See also Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) (bad check not a false statement within the meaning of 18 U.S.C. § 1014). Fortunately, the court need not deal with that issue in this proceeding because the Debtor made an express representation every time she induced Currency Exchange to cash one of the checks in question that the check was "good." Such assertions clearly qualify as statements under § 523(a)(2)(A). Furthermore, the Debtor testified that she called her bank every day to get the balance in her business account, the account on which the checks were written. Thus, she had to know that her statements were false. Thus, Currency Exchange has shown the first element of fraud under § 523(a)(2)(A), a false statement.

In addition, the court must conclude that the Debtor's statements were made solely with the intent to deceive Currency Exchange into cashing her checks. It is clear the Debtor was engaged in a check kiting scheme. When the Debtor's bank said it would not cover her overdrafts without a deposit of cash or the equivalent, the Debtor turned to a naive source of such cash, Currency Exchange. Consequently, Currency Exchange has proven the second element of fraud under § 523(a)(2)(A), intent to deceive.

Finally, Currency Exchange has clearly shown that it relied upon the Debtor's statements in cashing the checks, and that, as a result of such reliance, the Currency Exchange has been substantially harmed—it is out-of-pocket $77,500. Thus, Currency Exchange has met its burden of proof with respect to actual reliance and detriment as well.

Thus, the only question remaining is whether Currency Exchange's reliance on the Debtor's representations was reasonable. In *In re Bailey*, 145 B.R. 919, 932 (Bankr.N.D.Ill.1992) (Ginsberg, J.), this court considered whether a bank's failure to verify the values assigned by the debtor made the bank's reliance on those financial statements in lending to the debtor unreasonable. This court stated that:

> [i]n answering that question, it is important to keep in mind that "we do not sit as an after-the-fact loan committee, second guessing lending decisions." *Matter of Harasymiw*, 895 F.2d 1170, 1174 (7th Cir.1990).

Among the facts the court considers relevant in measuring the reasonableness of the Bank's reliance is the fact that the evidence shows the Bank followed its lending procedures in its dealings with the Debtor and his businesses. *See Harasymiw*, 895 F.2d at 1174 (refusal to overturn lower court's decision based on the plaintiff's compliance with its establishing lending procedures). While it might be argued that the Bank should have verified the value the Debtor assigned to his home in his financial statements—his overwhelmingly largest asset—by obtaining an appraisal, the failure of the Bank to verify the information was "not so unreasonable" as to justify a finding that there was no reliance, especially in light of the past business history between the Debtor and the Bank. *See Matter of Garman*, 643 F.2d 1252, 1259 (7th Cir.1980).

Following the rationale of *Bailey*, this court believes that Currency Exchange's reliance on the Debtor's statements was reasonable. Although, as in *Bailey*, it might be argued that Currency Exchange should have called the Debtor's bank to verify that the Debtor had sufficient funds to cover the checks prior to accepting them, Currency Exchange's normal check-cashing procedure did not involve such verification. Furthermore, as in *Bailey*, there was a significant prior relationship between the Debtor and the creditor. In light of these two factors, it was not unreasonable for Currency Exchange to rely on the Debtor's representations and fail to independently verify that the Debtor had sufficient funds to cover the checks prior to accepting them. Thus, Currency Exchange's reliance on the Debtor's statements was reasonable.

The Debtor's various attempts to explain the transactions in questions simply do not ring true, nor do they make much sense. She called the Bank daily, so she knew what was going on. Her claim that she was "joking" about the checks being good is preposterous. She intentionally embarked on a check kiting scheme in a desperate effort to save her business. The effort failed, and she got caught. Now she must face the consequences of her fraudulent scheme.

The court holds that Currency Exchange has proven all the elements of fraud under § 523(a)(2)(A), and thus the debt owed by the Debtor to Currency Exchange is non-dischargeable.

### CONCLUSION

Because Currency Exchange has met its burden of proof with respect to the elements of fraud under § 523(a)(2)(A), the $77,500 debt owed by the Debtor to Currency Exchange is nondischargeable.