### In re Andrew PHILOPULOS, Debtor.

**Nite Lite Signs and Balloons, Inc., an Illinois Corporation, Plaintiffs**

**v.**

**Andrew Philopulos, Defendant.**

**Bankruptcy No. 03 B 17234.**

**Adversary No. 03 A 03357.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 4, 2004.

---

William P. Danna, Ltd., Riverside, IL, for Plaintiff.

Steven A. Leahy, Stevens Point, WI, for Defendant.

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW AS TO COUNTS I, II, III, AND IV

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary relates to the bankruptcy case of Andrew Philopulos ("Debtor" or "Defendant"). Nite Lite Signs And Balloons, Inc. ("Plaintiff" or "Nite Lite") alleges that the Debtor, as an agent of Beginnings Inc., fraudulently issued a series

of bad checks in violation of the Illinois Deceptive Practices Statute, 720 Ill. Comp. Stat. 5/17 et seq., and is personally liable for damages and attorneys fees. Plaintiff seeks to have the debt for those checks declared nondischargeable under 11 U.S.C. § 523(a)(2)(B). For reasons stated below, those debts are ruled to be dischargeable and judgment will enter for Defendant.

## BACKGROUND AND PROCEDURAL HISTORY

Nite Lite rents advertising equipment and supplies. The Debtor manages and administers the banking accounts of a corporation Beginnings Inc. d/b/a Beginnings Bar and Grill ("Beginnings" or "the Corporation"). Beginnings rented equipment from Nite Lite on April 5, 12, 19, and 24, 2002. The Debtor, on Beginnings' behalf, issued two checks from his personal bank account and two from Beginnings' accounts to pay for the rentals. All those checks bounced. The Debtor issued three subsequent checks from Beginnings' corporate bank accounts. These checks also bounced. Nite Lite's subsequent efforts to collect from Beginnings and the Debtor proved futile.

At some point in 2002, the Cook County Department of Buildings and Zoning imposed a weekly environmental penalty against Beginnings, and the Corporation has since dissolved.

On August 6, 2003, Plaintiff filed this seven count Adversarial Complaint against the Debtor alleging that Mr. Philopulos issued the seven checks with intent to defraud in violation of the Illinois Deceptive Practices Act.

Each dishonored check is a separate Count in the Complaint. Counts I and II allege that the Debtor issued Check No. 851 and Check No. 860 knowing that insufficient funds existed to liquidate the checks. The Debtor issued Check No. 851 and Check No. 860 from his personal bank account.

Counts III through VII allege that the Debtor, acting as an employee or agent of Beginnings, caused Check Nos. 1068, 1021, 1123, 1140, and 1141 to be issued on Beginnings' account knowing that insufficient funds existed to pay those checks. Plaintiff seeks to recover treble damages and attorneys fees under the Illinois Deceptive Practices Statute and contends that debts based on all those checks is nondischargeable.

At the close of Plaintiff's case-in-chief, Defendant moved for judgment on partial Findings as to all Counts of the Complaint pursuant to Fed.R.Bankr.P. 7052. Pursuant to Findings of Fact and Conclusions of Law stated orally from the bench it was held that the Debtor issued Check Nos. 1123, 1140, and 1141 to replace three original dishonored checks and the replacement checks were not used to obtain money, property services or an extension, renewal or refinancing of credit as required under § 523(a)(2). Judgment was therefore entered in favor of Defendant on Counts V, VI, and VII. The Court reserved ruling on Counts I, II, III, and IV until conclusion of trial. *See* Order as to Counts I, II, III, & IV, March 16, 2004 and Judgment Order as to Counts V, VI, VII, March 16, 2004. This opinion addresses Counts I, II, III and IV corresponding to Check Nos. 851, 860, 1068, and 1021.

Following close of trial, Plaintiff moved to reopen proofs to admit additional records and an itemization of attorneys fees incurred in litigating this action into the record. Plaintiff was permitted to prove attorneys fees. Plaintiff established $2,036.25 in attorneys fees and costs. *See* Petition for Attorneys Fees, March 1, 2004.

The Adversary proceeding was tried, evidence taken, the parties rested, and the Court now makes and enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

#### Findings of fact are based on pleadings and evidence presented at trial

1. Nite Lite Signs and Balloons Inc. is an Illinois Corporation that rents advertising equipment and supplies such as portable signs, advertising balloons, and searchlights. (Test. of C. Manski, Tr. at 7.) [1]

2. Nite Lite contracts directly with its customers but uses an independent contractor to deliver its rental equipment and supplies. (Test. of C. Manski, Tr. at 75.)

3. Nite Lite's independent contractor collects payment from the customer at the point of delivery and forwards it to Nite Lite. (Test. of C. Manski, Tr. at 24, 76.)

4. Beginnings Inc. d/b/a Beginnings Bar and Grill was an Illinois Corporation.

5. From 1999 to 2002, Beginnings rented equipment and supplies from Nite Lite to advertise specials at Beginnings Bar and Grill. (Test. of C. Manski, Tr. at 8–11.)

6. The Debtor was the registered agent of Beginnings and managed Beginnings Bar and Grill. (Test. of A. Philopulos, Tr. at 80–84.)

7. The Debtor's duties included managing Beginnings' corporate bank accounts. The Debtor disbursed checks on the Corporation's behalf, maintained a register of account activity and deposited funds. (Test. of A. Philopulos, Tr. at 78, 84, 89, 109.)

8. The Debtor is an authorized signatory of checks issued on the Corporation's behalf. (Test. of A. Philopulos, Tr. at 85)

9. Beginnings owned corporate bank accounts with TCF Bank and First National Bank of Illinois.

10. The Debtor also paid for expenses relating to Beginnings Bar and Grill from his personal bank account. (Test. of A. Philopulos, Tr. at 86; Pl.'s Ex. A, B.) [2]

#### Equipment Delivery

11. On April 2 or 3, 2002 the Debtor contacted Christopher Manski ("Manski"), the President of Nite Lite, seeking to rent a four-beam searchlight truck and operator for April 5, 12, 19, and 24, 2002. (Test. of C. Manski, Tr. at 22.)

12. Manski stated Nite Lite's terms and conditions of rental and that payment would be required upon each delivery. (Test. of C. Manski, Tr. at 22.)

13. The Debtor accepted the rental terms and conditions and promised to pay with a check of $375 at each delivery. (Test. of C. Manski, Tr. at 22–23.)

14. On April 5, 2002 Nite Lite's independent contractor delivered the searchlight to Beginnings. The Debtor tendered a check of $375 ("Check No. 851") to Nite Lite's independent contractor. (Test. of C. Manski, Tr. at 23; Pl.'s Ex. A, K.) The Debtor issued Check No. 851 from his personal bank account.

15. The independent contractor mailed the check to Nite Lite. (Test. of C. Manski, Tr. at 24.) Nite Lite received and deposited the check received approximately one week later. (Test. of C. Manski, Tr. at 24.)

16. Manski contacted the Debtor on April 10, 2002 to confirm delivery and pay-

---

[1]. "Tr. at 7" here and similar references refer to the trial transcript of proceedings on March 8, 2004.

[2]. "Pl.'s Ex." refers to Plaintiff's exhibits admitted into evidence at trial.

ment for April 12. The Debtor again promised to tender a check upon delivery.

17. Nite Lite's independent contractor delivered the searchlight to Beginnings on April 12. The Debtor again tendered a check of $375 ("Check No. 860") to Nite Lite's independent contractor. (Test. of C. Manski, Tr. at 27; Pl.'s Ex. B.) The Debtor issued Check No. 860 from his personal bank account.

18. The independent contractor forwarded Check No. 860 to Nite Lite. Nite Lite received and deposited Check No. 860. (Test. of C. Manski, Tr. at 24.)

19. Manski contacted the Debtor a third time on April 17, 2002 to confirm delivery and payment for April 19. The Debtor again promised to tender a check upon delivery. (Test. of C. Manski, Tr. at 28.)

20. On April 19, Nite Lite's independent contractor delivered the searchlight. The Debtor tendered a check of $375 ("Check No. 1021") to Nite Lite's independent contractor. (Test. of C. Manski, Tr. at 23; Pl.'s Ex. D, K.) The Debtor issued, executed, and delivered Check No. 1021 from Beginnings' corporate account at TCF Bank, ("Account 344").

21. The independent contractor forwarded Check No. 1021 to Nite Lite. (Tr. at 24) Nite Lite received and deposited the check. (Test. of C. Manski, Tr. at 24.)

22. Manski contacted the Debtor a fourth time on April 24, 2002 to confirm delivery and payment for April 26. (Test. of C. Manski, Tr. at 29.)

23. Nite Lite's independent contractor delivered the equipment and the Debtor tendered Check No. 1068 in the amount of $375. (Pl.'s Ex. C.) The Debtor issued Check No. 1068 from Beginnings' corporate account at TCF Bank ("Account 201").

24. The independent contractor forwarded the check to Nite Lite. (Test. of C. Manski, Tr. at 24.) Nite Lite received and deposited the check. (Test. of C. Manski, Tr. at 24.)

### Notification of Dishonored Checks

25. After the final delivery of equipment on April 24, 2002, Manski became aware that the checks were dishonored.

26. On April 26, the Debtor's bank dishonored and returned Check No. 851. (Test. of C. Manski, Tr. at 38; Pl.'s Ex. A.)

27. On May 20, the Debtor's bank dishonored and returned Check No. 860. (Test. of C. Manski, Tr. at 38; Pl.'s Ex. B.)

28. On May 20, Beginning's bank dishonored and returned Check No. 1021. (Test. of C. Manski, Tr. at 31; Pl.'s Ex. D.)

29. On May 28, Beginning's bank dishonored and returned Check No. 1068. (Test. of C. Manski, Tr. at 39; Pl.'s Ex. C.)

### Status of Beginnings' Bank Accounts

30. During the period from April to May 2002, in which Beginnings' contracted for Nite Lite's services, Beginnings' bank accounts had negative balances. (Pl.'s Ex. H.)

31. Account 344 had a negative balance of $2,093.75 in March 2002. (Pl.'s Ex. H.)

32. Account 344 had a negative balance of $22.43 and had eleven checks returned for non-sufficient funds in April 2002. (Pl.'s Ex. H.)

33. Account 344 had a negative balance of $43.43 in May 2002 and 4 checks were dishonored. (Pl.'s Ex. H.)

34. Account 201 had a negative balance of $1,248.31 in April 2002. (Pl.'s Ex. H.)

35. Account 201 had a negative balance of $1,251.31 in May 2002. (Pl.'s Ex. H.)

36. The Debtor received monthly statements reflecting the status and balances of

all of Beginnings' accounts. (Test. of A. Philopulos, Tr. at 78.)

37. The Debtor received monthly statements reflecting the status and balances of his personal bank account. (Test. of A. Philopulos, Tr. at 78.)

### Collection Efforts

37. After notification that the checks were dishonored, Manski attempted to collect the debt.

38. Between April 26 and May 24, 2002 Manski contacted the Debtor via the telephone three to four times a week. (Test. of C. Manski, Tr. at 41.)

39. The Debtor told Manski that he believed funds would soon be available and orally promised to pay. (Test. of C. Manski, Tr. at 42–45.)

40. During this period, however, the Cook County Department of Buildings and Zoning imposed a weekly environmental penalty on Beginnings. (Def.'s Findings of Fact ¶ 4.)

41. The Debtor attempted to pay the debt due on dishonored checks by issuing replacement checks from Beginnings' corporate bank account at First National Bank of Illinois ("First National").

42. On May 24, 2002, the Debtor issued Check No. 1123 in the amount of $1,500.00. First National returned Check 1123 stamped "Return Not Paid." (Pl.'s Ex. E.)

43. On June 17, 2002, the Debtor issued Check No. 1140 in the amount of $750. First National returned Check No. 1140 stamped "Account Closed, Return Unpaid." (Pl.'s Ex. F.)

44. On June 17, 2002, the Debtor issued Check No. 1141 in the amount of $1,500. First National returned Check No. 1141 stamped, "Account Closed, Return Unpaid." (Pl.'s Ex. G.)

45. In 2003 Manski sought the assistance of legal counsel. On March 19, 2003

Nite Lite's counsel delivered by certified mail and first class mail a demand notice to the Debtor as the registered agent of Beginnings and in his individual capacity. (Pl.'s Ex. J1–J5.)

46. The notice requested that the Debtor or Beginnings satisfy the debt within thirty days.

47. Beginnings did not respond to the demand notice or satisfy the debt.

48. The Debtor did not respond to the demand notice or satisfy the debt.

49. The total due for all the rentals on April 5, 12, 19, and 26, 2002 is $1,500.

50. On April 17, 2003 the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code.

51. Plaintiff filed the instant Adversarial Complaint on August 8, 2003.

52. Facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

### Jurisdiction

Jurisdiction over this matter lies under 28 U.S.C. § 1334 and under District Court's Internal Operating Procedure 15(a). Determinations of the dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409.

### Liability under the Illinois Deceptive Practices Statute

■ Section 5/17–1 of the Illinois Criminal Code prescribes certain deceptive practices, including the issuance of bad checks. Specifically, the statute states:

A person commits a deceptive practice when, with intent to defraud:

(d) With intent to obtain control over property or to pay for property, labor or

services of another ... he issues or delivers a check or other order upon a real or fictitious depository for the payment of money, knowing that it will not be paid by the depository. Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered, or when such check or other order is presented for payment and dishonored on each of 2 occasions at least 7 days apart, is prima facie evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud. In this paragraph (d), "property" includes rental property (real or personal).

720 Ill. Comp. Stat. 5/17–1 (2004). If a party establishes the predicates of this section, civil liability is available under Section 17–1a.

■ Section 17–1a imposes significant penalties on those who write bad checks and holds that after certain collection efforts come up dry, the payee of a bad check may sue for the face value of the check, treble damages up to $1,500, and attorneys fees and court costs. 720 Ill. Comp. Stat. 5/17–1a (2004)[3]; *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir.2000).

■ To recover damages, a plaintiff must show (1) that a defendant delivered a check to obtain personal property; (2) that the defendant knew at the time that the account was insufficient to pay the check; (3) that the defendant acted with the intent to defraud, (4) and that the defendant failed to pay on demand. *Veteran Supply Co. v. Swaw*, 192 Ill.App.3d 286, 548 N.E.2d 667, 668, 139 Ill.Dec. 282 (1989).

■ The Plaintiff has established the first and fourth statutory requirements. On April 5, 12, 19, and 24, 2002, the Debtor issued four checks to pay for rental equipment and failed to pay after receipt of written demand.

The second requirement, that the defendant knew at the time he issued the checks that there were then insufficient funds to pay the check, has also been established. When questioned by Nite Lite's counsel, the Debtor admitted that his register of account activity indicated that the accounts from which the checks issued were shown to be in the negative on the dates that he issued the checks.[4]

■ The third and final requirement is intent to defraud. Intent to defraud under the state statute is established by the mere failure to have sufficient funds in an account when the check is issued or presented for payment on two occasions at least seven days apart. 720 Ill. Comp. Stat. 5/17–1 (2004). Plaintiff has proven that the Debtor did not have sufficient funds in his account when the checks were issued

---

**3.** Section 17a provides: A person who issues a check or order to a payee in violation of Section 17–1(B)(d) and who fails to pay the amount of the check or order to the payee within 30 days following either delivery and acceptance by the addressee of a written demand by both certified mail and by first class mail ... shall be liable to the payee ... for, in addition to the amount owing upon such check or order, damages of treble the amount so owing, but in no case less than $ 100 nor more than $ 1,500, plus attorney fees and court costs. 720 Ill. Comp. Stat. 5/17–1a (2004).

**4.** The transcript reads as follows:

Nite Lite's Counsel: All right. But your register that you were keeping in your office showed otherwise. It showed that the account was in a negative balance; isn't that correct sir? The Debtor: That shows negative, yeah.

Nite Lite's Counsel: And your register that you were keeping where you were tallying every time you wrote the check bringing down the balance, your account also showed negative; isn't that correct? The Debtor: Yeah.

Testimony of A. Philopolus, Tr. at 106.

and that the accounts contained insufficient funds when the checks were presented for payment. Plaintiff therefore satisfied the requirements of the state statute.

■ The Debtor is individually liable even though he issued the checks as an agent of Beginnings. *Veteran Supply Co.*, 139 Ill.Dec. 282, 548 N.E.2d at 668 ("corporate officer status does not insulate [the corporate officer] from individual liability for the torts of the corporation in which he actively participates.") (quoting *Acceptance Co. v. Pintura Corp.*, 94 Ill.App.3d 703, 706, 50 Ill.Dec. 120, 418 N.E.2d 1114 (1981)); *Citizens Savings & Loan Association v. Fischer*, 214 N.E.2d 612, 67 Ill. App.2d 315, (1966) ("the rule is that whoever participates in a fraudulent act is guilty of fraud and that the fact that a corporation must act through its agents has no bearing on the officer's liability.") Furthermore, individual liability attaches even if the corporate agent does not use the property acquired by the bad checks. *Veteran Supply Co.*, 139 Ill.Dec. 282, 548 N.E.2d at 668.

Under the Illinois Deceptive Practices Statute, the Debtor is therefore individually liable for the face value of the checks $375 × 4 = $1,500; plus attorneys fees and expenses of $2,036.25; plus statutory damages of "up to" $1,500. Nite Lite contends that this debt is nondischargeable under § 523(a)(2)(B).

### *Dischargeability under 11 U.S.C. § 523(a)(2)(B)*

■ Establishment of the Debtor's fraudulent intent under the Illinois Deceptive Practices Act does not automatically render this debt nondischargeable under 11 U.S.C. § 523. Whether a debt is dischargeable is a question of federal bankruptcy law. *See, e.g., Check Control v. Anderson (In re Anderson)*, 181 B.R. 943, 948 (Bankr.D.Minn.1995) ("Fraud imputed by statutory provision ... is not sufficient to establish nondischargeability.")

■ Exceptions to discharge are construed strictly against a creditor and liberally in favor of the debtor. *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992). The objecting creditor has the burden to prove exceptions to discharge by a preponderance of the evidence. *Id.* at 524; *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Section 523(a)(2)(B) provides:
A discharge under § 727 of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by the use of a statement in writing
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with the intent to deceive.

Nite Lite must prove five elements: (1) the debtor made a statement in writing; (2) the statement was materially false; (3) the statement concerned the debtor's financial condition; (4) the debtor intended to deceive the creditor; and (5) the creditor reasonably relied on the statement. *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995).

Nite Lite contends that the checks are statements respecting the Debtor's financial condition and the Debtor's tendering of the checks constituted a false representation that he had sufficient funds to cover the checks. Pl.'s Br. at 6–7. Nite Lite relies on *Total Television, Inc. v. Lewsad-*

der (In re Lewsadder), 84 B.R. 711 (Bankr. D.Ore.1988), *American Security Insurance Service, Inc. v. Damiani (In re Damiani)*, 157 B.R. 17 (Bankr.N.D.Ohio 1993), and *Bear Stearns & Co. v. Kurdoghlian (In re Kurdoghlian)*, 30 B.R. 500 (9th Cir. BAP 1983), for the proposition that the tender of a check is an implicit representation that sufficient funds exists to cover the check.

These cases, however, conflict with the Seventh Circuit holding in *Scarlata,* 979 F.2d at 525 (1992). *Scarlata* held that the presentation of a check is not a representation of any kind and serves only to direct the drawee bank to pay the face amount to the bearer. *Id.* at 525 (extending the reasoning of *Williams v. United States,* 458 U.S. 279, 285–86, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) into the bankruptcy context.)

 Following the reasoning of *Scarlata,* a bad check is not a statement of any kind, much less a materially false statement about a debtor's financial condition. *See, e.g., Bednarsz v. Stanislaw Brzakala (In re Brzakala)*, 305 B.R. 705, 710 (Bankr.N.D.Ill.2004). Nite Lite has therefore not satisfied the elements of dischargeability under § 523(a)(2)(B).

### Dischargeability under 11 U.S.C. § 523(a)(2)(A)

Plaintiff's complaint pleaded 11 U.S.C. § 523 as a basis for relief, and did not specify reliance or actual fraud, false pretenses, or misrepresentation under Section 523(a)(2)(A). However, Plaintiff did plead fraud under state law. Because Plaintiff might argue for recovery under Section 523(a)(2)(A) that provision will be discussed. It provides that a debtor will not be discharged from any debt obtained by false pretenses, false representations or actual fraud. 11 U.S.C. § 523(a)(2)(A).

### False Pretenses and False Representations

 To prove false pretenses and false representations Nite Lite must prove by preponderance of evidence: (1) that the Debtor made a false representation; (2) that the Debtor possessed the requisite scienter; i.e. he actually intended to deceive Nite Lite; and (3) Nite Lite actually relied on the Debtor's representations to its detriment. *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 673 (7th Cir. 1995)

 False pretenses has been defined as implied misrepresentations or conduct intended to create or foster a false impression. *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr. M.D.N.C.1994). In contrast, a false representation is an express misrepresentation. *Hile v. Lewis (In re Lewis)*, 164 B.R. 588 (Bankr.N.D.Ohio 1994); *Banner Oil Co v. Bryson (In re Bryson)*, 187 B.R. 939, 959 (Bankr.N.D.Ill.1995).

 The Defendant's promises to hand over checks upon delivery from Plaintiff and the issuance of those checks were not representations of any kind. *Scarlata,* 979 F.2d at 525; *Microtech International, Inc. v. Horwitz (In re Horwitz)*, 100 B.R. 395, 399–400 (Bankr. N.D.Ill.1989) ("Debtor's issuance of checks to Plaintiff, without more, does not constitute a false representation within the meaning of the Bankruptcy Code § 523(a)(2)(A)."). In order to establish a false representation, Nite Lite must prove that the debtor made an express representation that funds are available to satisfy the check. *See, e.g., 119th & Halsted Currency Exchange v. Blake–Ware (In re Blake–Ware)*, 155 B.R. 476 (Bankr.N.D.Ill. 1993) (finding fraud because creditor specifically asked Debtor if funds were available in her account and Debtor responded affirmatively.); *Bryson,* 187 B.R. at 960

("as a matter of law, in the absence of a positive statement regarding the sufficiency of the bank account, [Debtor's] issuance of checks does not constitute a false pretense or false misrepresentation.") Here there was no evidence of any such oral or written representation by the debtor. Whenever Manski requested payment, the Debtor replied that he expected funds to become available in the future. Plaintiff has failed to establish that the Debtor made a false representation or false pretense before or at the times he offered the checks in return for deliveries.

### *Actual Fraud*

 Actual fraud requires a plaintiff to prove that (1) a fraud occurred; (2) the debtor was guilty of intent to defraud; and (3) the fraud gave rise to the debt that is the subject of the discharge dispute. *McClellan v. Cantrell*, 217 F.3d 890, 893–894 (7th Cir.2000). *McClellan* further explained that

> "[f]raud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by suppression of truth." *Id.* at 893.

 Since fraudulent intent rarely can be proven directly, it must be inferred from the surrounding circumstances. *Mercantile Bank v. Canovas (In re Canovas)*, 237 B.R. 423, 428 (Bankr.N.D.Ill. 1998). Proof of intent for purposes of Section 523(a)(2)(A) must be measured by a debtor's subjective intention at the time of the transaction in which the debtor obtained the money, property or services. *Standard Bank & Trust v. Iaquinta (In re Iaquinta)*, 95 B.R. 576, 578 (Bankr.N.D.Ill. 1989). Therefore, subsequent acts of fraud or omission do not establish that the debtor had the requisite intent at the time

to make any fraudulent representations. *Citibank (S.D.) v. Harris (In re Harris)*, 203 B.R. 117, 121 (Bankr.N.D.Ill.1996). This is because the debtor may have had appropriate intention at the time of transaction, but failed to act because of a change in debtor's circumstances. *Id.* Nite Lite contends that evidence of the Debtor's fraudulent intent, other than the issued checks themselves, are the monthly statements of Beginnings' corporate bank account statements. Pl.'s Ex. H. These statements provide a general picture of account activity for the months in which Beginnings rented the equipment. Although the statements indicate that the balance for the corporate accounts at the end of the month was negative, the statements also show that the Debtor made deposits into the accounts which were sufficient in absence of other draws on the account to pay the corporate checks in issue here. Moreover, the Debtor was in business during this period receiving payments for services. This tends to negate fraudulent intent as to the checks given to Plaintiff.

Moreover, other corporate accounts existed. Therefore, the corporation's bank statements are not necessarily evidence of fraudulent intent, and Plaintiff failed to establish actual fraud by a preponderance of evidence.

### *CONCLUSION*

Even though Plaintiff proved that Debtor violated the Illinois Deceptive Practices Act and established liability thereunder, it failed to show that this debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(B) or § 523(a)(2)(A). A separate judgment order will be entered consistent with the foregoing Findings and Conclusions, and entering judgment on the

remaining Counts I, II, III, and IV in favor of Defendant.